*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 16, 2026
12:20 PM

Plaintiff-Appellee,

v

No. 377838
Oakland Circuit Court
LC No. 2024-291294-FH

ROBERT A. HOLLON,

Defendant-Appellant.

Before: TREBILCOCK, P.J., and CAMERON and LIEVENSE, JJ.

PER CURIAM.

In this interlocutory appeal, defendant, Robert A. Hollon, appeals by leave granted[1] the trial court order denying his motion to exclude evidence. We vacate the trial court's order and remand for the trial court to conduct further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In this criminal case, defendant allegedly pushed his girlfriend, WP, down a flight of stairs in their home in Southeast Michigan in early June 2024. Within days, WP had travelled north to Traverse City and, at some point after arriving in the area, went to the emergency room at a hospital in Traverse City seeking treatment for her injuries. She was eventually transferred to Henry Ford Hospital in Detroit but died sometime later. Defendant was charged in mid-June 2024 with assault with intent to do great bodily harm less than murder under MCL 750.84.

At defendant's preliminary examination in October 2024, after WP passed away, Detective John Macklin of the Waterford Police Department testified that, on June 10, 2024, defendant went to the Waterford Police station to file a missing person's report regarding WP. Detective Macklin then learned that WP was being treated in the intensive care unit at Henry Ford Hospital and went there to interview her, either on June 10 or 11. During Detective Macklin's first visit, WP was

---

[1] *People v Hollon*, unpublished order of the Court of Appeals, entered January 16, 2026 (Docket No. 377838).

"too weak to communicate," and so he followed up with WP at the hospital the next day. During that interview, she reported, among other things, that "Robert pushed her down the main set of stairs in their home."

In addition, Detective Macklin testified that, before speaking to WP, he learned that WP previously had spoken with a paramedic and a treating emergency room doctor in Traverse City, where she had initially been brought for treatment before being transferred to Detroit. According to Detective Macklin, she had reportedly told them that defendant pushed her down the stairs, though Detective Macklin did not testify as to what WP precisely told the paramedic and doctor, they did not testify for unknown reasons, and the hearsay testimony was offered for a nonhearsay purpose. The district court found that the prosecution established probable cause and bound the matter over to the trial court.

Defendant moved to dismiss the complaint or, alternatively, to exclude at trial WP's statements to Detective Macklin, the paramedic, and the ER doctor, in which she identified defendant (either directly or by inference) as having pushed her. Defendant argued the statements were inadmissible hearsay and barred by the Confrontation Clause of the United States Constitution. In response, the prosecution conceded that WP's statements to Detective Macklin were inadmissible hearsay but argued that WP's statements to the paramedic and ER doctor, both of whom had interacted with WP before she was transferred to Henry Ford Hospital, were admissible under a hearsay exception. The prosecution represented that WP stated to the paramedic, when asked about injuries to her arm, that the location of the injuries was "where her 'boyfriend forcefully grabs her.' " The prosecution also represented that, when asked about injuries to her legs and knees, WP "stated that her boyfriend 'pushed her down a flight of stairs two days prior' and is 'generally abusive to her.' " And it represented that WP made similar statements to a treating ER doctor about having been assaulted and being in a domestic violence relationship, statements that are documented in medical records, although the ER doctor's exact expected testimony as to what WP said is unknown.

The trial court heard argument but did not hold an evidentiary hearing and later issued an opinion and order that WP's statements to the paramedic and doctor were admissible under MRE 803(4) and were not barred by the Confrontation Clause. As to the statement to the paramedic, the trial court ruled WP's "statement was in response to what caused her bruises and was made to [the paramedic] so that he could treat her injuries. The statement described the general character of the cause of her bruising and was reasonably necessary for diagnosis and treatment." It later continued that "doctors needed to be aware that [WP] allegedly suffered from domestic abuse so that they could provide domestic violence support and connect [WP] with the appropriate resources." As to the ER doctor, the trial court held that "the defendant's motion is also DENIED for the same reasons as outlined above." Regarding the dismissal motion, the trial court denied the motion without prejudice and left the prosecution to its proofs. This interlocutory appeal followed.

## II. STANDARDS OF REVIEW

Our Supreme Court has instructed that appellate courts review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Lemons*, 514 Mich 485, 503; 22 NW3d 42 (2024) (citations omitted). This Court reviews "preliminary issues of law, such as

admissibility of evidence based on construction of a constitutional provision, de novo." *People v Spangler*, 285 Mich App 136, 142; 774 NW2d 702 (2009) (quotation marks and citation omitted). Where an argument regarding admissibility of evidence is not made in the trial court, we review for plain error. *People v Brown*, 326 Mich App 185, 195; 926 NW2d 879 (2018), amended on other grounds 326 Mich App 185 (2019).

## III. ANALYSIS

Defendant argues the trial court abused its discretion by denying his motion to exclude hearsay statements identifying defendant because they are inadmissible hearsay and barred by the Confrontation Clause. We agree that, based on the available record, the trial court abused its discretion by denying the motion to exclude the challenged statements under the Michigan Rules of Evidence.

### A. MRE 803(4)

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Generally, "[a]ll relevant evidence is admissible . . . ." MRE 402. Hearsay, however, is not admissible unless it falls within an exception. MRE 802; *People v Musser*, 494 Mich 337, 350; 835 NW2d 319 (2013). Hearsay is a statement that "the declarant does not make while testifying at the current trial or hearing" and which "a party offers in evidence to prove the truth of the matter asserted in the statement." MRE 801(c)(1) and (2); *People v Smith*, 336 Mich App 79, 110; 969 NW2d 548 (2021). MRE 803(4) provides an exception to the hearsay ban for a statement that "is made for—and is reasonably necessary to—medical treatment or diagnosis in connection with treatment" and "describes medical history, past or present symptoms or sensations, their inception, or their general cause."

At issue here is what the paramedic and ER doctor who treated WP can testify to regarding what WP told them, and, more specifically, whether the identity of her alleged assailant is admissible under MRE 803(4). When analyzing the admissibility of evidence, it is necessary to identify the specific evidence being offered and the purpose for which it is offered. See *People v. Sabin*, 463 Mich 43, 56; 614 NW2d 888 (2000) ("That our Rules of Evidence preclude the use of evidence for one purpose simply does not render the evidence inadmissible for other purposes. Rather, the evidence is admissible for a proper purpose, subject to a limiting instruction under MRE 105.").

In *People v LaLone*, 432 Mich 103, 111-113; 437 NW2d 611 (1989), our Supreme Court held that a child sexual abuse victim's statement to a psychologist identifying the child's abuser was not admissible under MRE 803(4) because, among other reasons, "the identity of an assailant cannot be fairly characterized as the 'general cause' of an injury." That the victim was seeking psychological, rather than medical, treatment, was important to the Court's analysis. *LaLone*, 432 Mich at 109-110, 114-116.

Three years later, in *People v Meeboer (After Remand)*, 439 Mich 310, 322; 484 NW2d 621 (1992), the Michigan Supreme Court held that a child sexual assault victim's hearsay

statement identifying the child's assailant made to a physician—as opposed to a psychologist—was admissible under MRE 803(4). *Meeboer* noted that *LaLone* had not "create[d] a prophylactic exclusion of all hearsay statements of identification made to physicians." *Id*. at 328. Instead, *Meeboer* held that, when deciding the admissibility of a hearsay statement of identification under MRE 803(4), courts look to the trustworthiness and necessity of the statement in light of MRE 803(4)'s underlying rationale: "(1) the self-interested motivation to speak the truth to treating physicians in order to receive proper medical care, and (2) the reasonable necessity of the statement to the diagnosis and treatment of the patient." *Id*. at 322-30.

*Meeboer* then listed several "[f]actors related to trustworthiness guarantees surrounding the actual making of the statement," which included:

> (1) the age and maturity of the declarant, (2) the manner in which the statements are elicited (leading questions may undermine the trustworthiness of a statement), (3) the manner in which the statements are phrased (childlike terminology may be evidence of genuineness), (4) use of terminology unexpected of a child of similar age, (5) who initiated the examination (prosecutorial initiation may indicate that the examination was not intended for purposes of medical diagnosis and treatment), (6) the timing of the examination in relation to the assault (the child is still suffering pain and distress), (7) the timing of the examination in relation to the trial (involving the purpose of the examination), (8) the type of examination (statements made in the course of treatment for psychological disorders may not be as reliable), (9) the relation of the declarant to the person identified (evidence that the child did not mistake the identity), and (10) the existence of or lack of motive to fabricate. [*Id*. at 324-325 (citations omitted).]

Then, with respect to the "reasonable necessity of the statement to the diagnosis and treatment of the patient," *Meeboer* held that, in sexual assault situations, "[i]dentification of the assailant may be necessary" to medical issues such as a sexually transmitted disease, pregnancy, potential pregnancy complications, and "part of the physician's choice for diagnosis and treatment, allowing the physician to structure the examination and questions to the exact type of trauma the child recently experienced." *Id*. at 328-329. *Meeboer* also linked the assailant's identification to psychological trauma and the "manner of treatment, especially where the abuser is a member of the child's household." *Id*. at 329. *Meeboer* was a child sexual assault case where the child spoke to a doctor, although it has been applied where the victim is an adult and made statements to a nurse at a clinic specializing in treating sexual assault survivors. *Id*. at 333-334; *People v Garland*, 286 Mich App 1, 7-10; 777 NW2d 732 (2009); *People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011).

On appeal, and seeking to affirm the trial court's ruling, the prosecution argues that WP's statements of identification to the paramedic and ER doctor are trustworthy because they demonstrate "a self-interested motivation to speak the truth" because WP was "critically ill and needed emergency care" and she was an adult. Regarding reasonable necessity of the statement to diagnosis and treatment, the prosecution analogizes to the factors relevant in *Meeboer* (a child sexual abuse case) and argues that "[e]ach of these reasons also apply in the context of nonsexual domestic abuse regardless of whether the victim is a child or adult." The prosecution also cites several articles and resources regarding medical diagnoses in domestic violence situations.

The available record, however, is insufficient to support either the trial court's reasoning or the prosecution's arguments. We hold, therefore, that the trial court abused its discretion in denying the motion.

As an initial matter, *Meeboer* has not been extended to nonsexual assault cases involving adults, as the prosecution seeks to do here. The prosecution relies on *People v Jones*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 362854); slip op at 6, which was a child abuse case without sexual assault allegations. *Jones*, however, is distinguishable in meaningful ways. *Jones* arose post-trial,[2] thus witnesses had testified, and the trial court had a developed factual record regarding the *Meeboer* factors with respect to both trustworthiness and the reasonable necessity of the statement to the patient's diagnosis and treatment. Also, while *Jones* affirmed the trial court's decision to admit the hearsay statement under MRE 803(4), it acknowledged that the trial court's consideration of the *Meeboer* factors regarding trustworthiness was "partially unsatisfactory" because it "did not consider whether [the minor victim] understood the importance of speaking truthfully to the care provider" and it had ignored testimony relevant to the factors. *Id*. at ___; slip op at 7. *Jones* ultimately affirmed the testimony's admission, but it considered the issue a "close question" and found that even if it had been an abuse of discretion to admit the evidence, reversal was not warranted. *Id*.

Here, on the other hand, there is no available testimony from the paramedic or ER doctor regarding what they might actually testify to, and so the trial court's analysis of trustworthiness and reasonable necessity to medical diagnosis and treatment did not satisfy the *Meeboer* factors. Regarding the paramedic's potential testimony, the trial court did not mention *Meeboer*'s trustworthiness factors at all. As to reasonable necessity, it briefly observed that WP's "statement was in response to what caused her bruises and was made to [the paramedic] so that he could treat her injuries," that it "described the general character of the cause of her bruising and was reasonably necessary for diagnosis and treatment," and that "doctors needed to be aware that [WP] allegedly suffered from domestic abuse so that they could provide domestic violence support and connect [WP] with available resources." The trial court's analysis of the ER doctor's potential testimony was less detailed, simply denying the motion to exclude "for the same reasons as outlined above," without any particularized analysis.

In light of the limited available record, this discussion is not enough to satisfy MRE 803(4) and the *Meeboer* factors and remand is required.

The trial court's analysis of the "trustworthiness" and "reasonable necessity" of the statements of identification to the "medical treatment or diagnosis in connection with treatment" was insufficient given the missing factual development and the trial court's failure to conduct an individualized inquiry concerning trustworthiness and reasonable necessity for each statement the prosecution wished to admit.

---

[2] The Michigan Rules of Evidence were amended on September 20, 2023, effective January 1, 2024. See 512 Mich lxiii (2023). As such, *Jones* involved a trial that occurred during a different version of Rule 803(4), though the differences are not relevant to our analysis.

Also, here the connection between the identity of WP's assailant (either directly or indirectly) and the paramedic and ER doctor's diagnosis and treatment may not be the same as in a sexual abuse case, which was the basis for admitting the evidence in *Meeboer*, 439 Mich at 328-336. It makes sense that a healthcare professional would, in general, ask about an injury's cause. But, without more, this alone does not necessarily satisfy the requirements of MRE 803(4), and, more importantly, the existing factual record does not meet MRE 803(4)'s requirements. See *LaLone*, 432 Mich at 116 (noting that the identity of the individual responsible for the hearsay declarant's injury "cannot be fairly characterized as the '*general* cause' of an injury.").

The trial court observed that WP's statement to the paramedic, as reported by the prosecution, "did not identify the defendant as the perpetrator" because WP only referenced her "boyfriend," thus the paramedic's testimony "did not identify the defendant as the perpetrator." This distinction led the trial court to rule that the paramedic could testify to what WP told him, but could not testify to who WP's boyfriend was, and it made the same ruling as to the ER doctor. But at this point we lack nonhearsay evidence from the paramedic and ER doctor. Also, this may be a distinction without a difference: whether the assailant is identified by name, nickname, relationship to the victim, or some other way does not necessarily matter under MRE 803(4)'s text, as they are all forms of identifying a perpetrator.

The prosecution cites a series of cases arising in other jurisdictions to support their position. Such cases are not binding on this Court and may be considered as persuasive authority only. See *People v Abcumby-Blair*, 335 Mich App 210, 231-232; 966 NW2d 437 (2020). Further, all but one of them arose in the post-trial context where the trial court knew the proposed testimony, the context in which it arose (trustworthiness), and its connection to medical diagnosis and care. See *State v Porter*, 390 Mont 174, 183-185; 2018 MT 16; 410 P3d 955 (2017) (post-trial); *Ward v State*, 50 NE3d 752, 764 (Ind, 2016) (same); *People v Pham*, 118 App Div 3d 1159, 1162; 987 NYS2d 687 (2014) (same); *Moore v City of Leeds*, 1 So 3d 145, 150 (Ala Crim App, 2008) (same); *United States v Hall*, 419 F3d 980, 987 (CA 9, 2005) (same); *Oldman v State*, 998 P2d 957, 962 (Wy, 2000) (same); but see *State v Koederitz*, 166 So 3d 981, 985; 2014-1526 (La, 3/17/15) (pre-trial). That is not the case here and so, on the existing record, the trial court abused its discretion in its order.

## B. MRE 803(7)

Alternatively, the prosecution argues the paramedic and ER doctor's testimony identifying WP's assailant are admissible under the residual hearsay exception, MRE 807. It did not raise this issue previously and the trial court did not address it, so the issue is unpreserved, and we review for plain error affecting substantial rights. *Brown*, 326 Mich App at 195. Under MRE 807, a hearsay statement must: "(1) demonstrate circumstantial guarantees of trustworthiness [], (2) be relevant to a material fact, (3) be the most probative evidence of that fact reasonably available, and (4) serve the interests of justice by its admission." *People v Douglas*, 496 Mich 557-558, 576, 852 NW2d 587 (2014). MRE 807's requirements "are stringent and will rarely be met, alleviating concerns that [it] will 'swallow' the categorical [hearsay] exceptions through overuse." *Id.*

Based on the available record the prosecution has not established that the paramedic or ER doctor's expected testimony is admissible under MRE 807. The analysis set forth above applies

here as well, particularly given that the trial court did not address the evidence's potential trustworthiness at all.

Given our holding on hearsay, we decline to address defendant's Confrontation Clause argument.

## IV. CONCLUSION

We hold that the trial court abused its discretion in denying defendant's motion to suppress the paramedic and ER doctor's anticipated testimony as to WP's statements identifying her assailant without first holding an evidentiary hearing sufficient to apply the required *Meeboer* factors. Since we base our decision on the existing factual record, and in light of the holding in *Jones*, we do not decide whether there is additional evidence that impacts potential admissibility under MRE 803(4). Therefore, on remand, if the prosecution continues to seek to elicit testimony at trial from the paramedic or ER doctor as to WP's statements identifying her assailant (either by name or otherwise), the trial court must first hold an evidentiary hearing at which the prospective witness testifies, and the trial court must apply this evidence to the *Meeboer* factors to determine its possible admissibility under MRE 803(4). We vacate the trial court's order and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Andrew J. Lievense